UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

Eugene K. Mallard,

               Plaintiff,

v.                                  Case No. 5:22-cv-04053-EFM-KGG

Laura Howard, et al.,

               Defendants.

**PRETRIAL ORDER**

On June 28, 2023, U.S. Magistrate Judge Kenneth G. Gale conducted a pretrial conference in this case by phone. Plaintiff Eugene K. Mallard appeared pro se. Defendants Laura Howard and Gabriel Rop appeared through counsel Matthew L. Shoger.

This pretrial order supersedes all pleadings and controls the subsequent course of this case. It will not be modified except by consent of the parties and the Court's approval, or by order of the Court to prevent manifest injustice. *See* Fed. R. Civ. P. 16(d) & (e); D. Kan. Rule 16.2(a).

**1.**      **PRELIMINARY MATTERS.**

      **a.**      **Subject-Matter Jurisdiction.** Subject-matter jurisdiction is invoked by Plaintiff under 28 U.S.C. § 1343(3) and 42 U.S.C. § 1983, and is disputed by Defendants due to Eleventh Amendment immunity, lack of standing, and mootness.

      **b.**      **Personal Jurisdiction.** The Court's personal jurisdiction over the parties is not disputed.

      **c.**      **Venue.** Venue in this court is not disputed.

    **d.**    **Governing Law.** Subject to the Court's determination of the law that applies to the case, the parties believe and agree that the substantive issues in this case are governed by the following law:

        **i.**    42 U.S.C. § 1983

        **ii.**    U.S. Constitution

            **A.**    First Amendment

            **B.**    Eighth Amendment

            **C.**    Fourteenth Amendment

        **iii.**    Religious Freedom Restoration Act (RFRA) (42 U.S.C. § 2000bb *et seq.*)

        **iv.**    Religious Land Use and Institutionalized Persons Act (RLUIPA) (42 U.S.C. § 2000cc *et seq.*)

        **v.**    Kansas Preservation of Religious Freedom Act (KPRFA) (K.S.A. 60-5301 *et seq.*)

**2.**    **STIPULATIONS.**

    **a.**    The following facts are stipulated:

        **i.**    Plaintiff Eugene Keith Mallard is a citizen of Kansas who presently resides at 1301 K-264 Hwy, Larned, Kansas 67550.

        **ii.**    Defendant Gabriel Rop is a citizen of Kansas and is employed as Administrative Program Director for the Kansas Sexual Predator Treatment Program.

        **iii.**    Defendant Laura Howard is a citizen of Kansas and is employed as Secretary for the Kansas Department for Aging and Disability Services (KDADS).

        **iv.**    Mallard has not begun other lawsuits in state or federal court dealing with the same facts involved in this action or otherwise relating to conditions of confinement.

      **v.**    Mallard has not previously sought informal or formal relief from the appropriate administrative officials regarding the acts complained of in his Complaint.

      **vi.**    At the time Plaintiff filed this petition he was only allowed to smudge once per week during the Pipe and Drum Ceremony. Now he is allowed to smudge once per day.

      **vii.**    Smudging with fire and smoking have been prohibited at times in the past during county-wide burn bans.

      **viii.**    Currently the sweat lodge practice is allowed once a month for four hours.

      **ix.**    Healing and passing ceremonies are currently allowed.

**b.**    The parties have not stipulated to the admissibility of any exhibits for purposes of summary judgment or trial.

**3.**    **FACTUAL CONTENTIONS.**

    **a.**    **Plaintiff's Factual Contentions.**

1. I am only allowed to smudge once per day. Traditional practice is twice per day. Gabriel Rop has decided to set this limit.

2. Smudging is a practice whereby one connects with Grandfather, the spirit of the Native American way. It is done by burning herbs (Sage, Cedar, Sweet grass) in a bowl and using a feather fan wafting it over the person or object in a clockwise pattern while a message is said to Grandfather.

3. For a Christian the equivalent to smudging is praying.

4. I learned the manner and method of smudging thirteen years ago from a member of the Red Wolf Society that carries a Bureau of Indian Affairs card.

5. When I began thirteen years ago, there was a scheduled time each day for the smudge to occur as it had to be done outside. Over time they eradicated this and denied it all together.

6. I have sincerely held the belief that a daily smudge was necessary in order to purify myself and stay connected with Grandfather. Without this daily practice, I feel lost and without my spiritual being.

7. The sweat lodge ceremony is one of the major cornerstones of the Native American religion.

8. The sweat lodge requires a special lodge and rocks, wood, fire and water.

3

9. The sweat ceremony should be held no less than once per week.

10. The ceremony is akin to returning to the womb of mother earth so that one is purified, gains strength, guidance, physical, emotional, mental and spiritual healing.

11. For a Christian the equivalent to sweat lodge is going to Church, Bible study or any other gathering focused on God or the Bible.

12. Currently the sweat lodge practice is only once a month and only partially given to me as I cannot complete the ceremony due to the limited time of 4 hours that is given.

13. I learned the manner and method of the sweat ceremony thirteen years ago from a member of the Red Wolf Society that carries a Bureau of Indian Affairs card.

14. Gabriel Rop and Laura Howard state that I cannot sweat at any time when a burn ban is in place by Pawnee County.

15. At all times while doing the sweat lodge practice in thirteen years I have never been careless and no unintended fire has occurred.

16. When I began thirteen years ago there was a scheduled time once a month for the sweat lodge ceremony to occur as it has to be done outside.

17. Over time they eradicated this and denied it all together. Recently they have given me back a partial sweat of four hours which Gabriel Rop and Laura Howard continue to enforce to this day.

18. I have sincerely held the belief that a weekly sweat ceremony was necessary in order to purify myself and stay connected with Grandfather.

19. Without the sweat lodge I feel lost and without my spiritual being.

20. The feast is a time to gather together and celebrate the changing of the seasons, such as winter and summer solstice, and the equinox of spring and fall.

21. The feast traditionally includes traditional fry bread, corn pemmican and other foods natural to Native Americans.

22. The food should be prepared by a practicing Native American on grounds and blessed as it is prepared.

23. For a Christian, the equivalent to feasts is a holiday meal such as Christmas and Easter, or just a gathering with a meal.

24. Christian, Muslim, persons are allowed a special meal or feast as a tenet of their religion. Jewish people are allowed Koshers meals as part of their religious faith. Gabriel Rop and Laura Howard ensured that this occurs.

25. I learned the manner and method of the feasts thirteen years ago from a member of the Red Wolf Society that carries a Bureau of Indian Affairs card.

26. At the time the group was able to prepare our own food the group provided most of the food items and prepared them in a traditional manner over an open flame.

27. When we were denied preparing or ordering our own food the facility would provide all the food items and prepare them.

28. I have sincerely held the belief that a feast was necessary in order to gather and tell stories, to celebrate a change in time or earth and stay connected with Grandfather.

29. Without the feast I feel lost and without my spiritual being.

30. The Sacred Pipe is the cornerstone of the Native American spirituality.

31. The drum represents the heart beat of the Native American people.

32. The smoke from the Sacred Pipe carries our prayers to Grandfather.

33. At a pipe and drum ceremony I smoke the pipe and play the drum and sing songs to the creator.

34. The Sacred Pipe should never be handled by anyone that is not Native American, except by the chaplain to visually inspect it.

35. For a Christian, the equivalent to Pipe and Drum is going to Church with their Bible, Communion supplies, Choir, and spiritual leader.

36. Christian, Muslim, or Jewish persons, are able to go to Church, Temple, or Mosque and praise, sing songs, and pray. Gabriel Rop, and Laura Howard ensure this occurs.

37. I learned the manner and method of the Pipe and Drum Ceremony thirteen years ago from a member of the Red Wolf Society that carries a Bureau of Indian Affairs card.

38. I have sincerely held the belief that a Pipe and Drum ceremony is a weekly gathering that is required to stay connected to Grandfather.

39. Without the Pipe and Drum ceremony I feel lost and without my spiritual being.

40. Gabriel Rop and Laura Howard, deny or cancel Pipe and Drum Ceremony when there is a lack of staff, burn ban, or because the staff that was assigned to go out did not want to go due to cold or heat, or called in.

41. The Pow-Wow (Spiritual Gathering) is an annual event of traditional dancing, speaking and praying in word, song, and music for all that lives.

42. The gathering of the people sometimes with outside guests who would be dressed in ceremonial clothing symbolizes a renewal of unity in the spirit.

43. A feast of traditional familiar foods (such as fry bread, corn pemmican, and buffalo meat) are a central part of the Pow-Wow.

44. For a Christian, the equivalent to a Pow-Wow is going to Church with their Bible, Communion supplies, Choir, and spiritual leader.

45. A Christian, Muslim, Jewish, Catholic, or Jehovah's Witnesses can go to Church, Temple, or Mosque and praise and sing songs and pray and have a religious meal, or outside visitors. Gabriel Rop, and Laura Howard ensure this occurs.

46. I learned the manner and method of the Pow-Wow thirteen years ago from a member of the Red Wolf Society that carries a Bureau of Indian Affairs card.

47. I have sincerely held the belief that a Pow-Wow is an annual gathering that is required to stay connected to Grandfather.

48. Without the Pow-Wow, I feel lost and without my spiritual being.

49. Gabriel Rop and Laura Howard, deny all Pow-wows and give no reason for the denial.

50. The Native American spiritual leaders are denied the same courtesy and access to confined persons as is afforded to ordained clergy.

51. For a Christian, the equivalent to a Spiritual leader, is a pastor, priest, rabbi or spiritual leader for the Muslim faith.

52. A Christian, Muslim, or Jewish, Jehovah's Witnesses or Catholic persons can have a spiritual leader to conduct worship services. Gabriel Rop, and Laura Howard ensure this occurs.

53. I learned the manner and method of Native American Spiritual leaders thirteen years ago from a member of the Red Wolf Society that carries a Bureau of Indian Affairs card.

54. I have sincerely held the belief that a Native American Spiritual leader is required to stay connected to Grandfather and to learn the ways of the ancestors.

55. Without a Spiritual leader, I feel lost and without my spiritual being.

56. Gabriel Rop and Laura Howard continue to deny a Native American Spiritual leader and no reason has been given for the denial.

57. The Native American passing and healing ceremonies should be done as soon as I learn of a sickness or death, normally within 24 hours of learning of the sickness or death.

58. Mourning the death of a relative or friend may include one or more of the following, (cutting of the hair, fasting, smudging, displaying ashes on the face, and wearing black headwear) and may last up to one year.

59. For a Christian the equivalent of a healing or passing ceremony is going to a doctor or hospital and going to a place of worship for a funeral.

60. A Christian, Muslim, or Jewish person can have a memorial service on grounds or go to a memorial service outside the facility. Gabriel Rop, and Laura Howard ensure this occurs.

61. I have sincerely held the belief that a Native American healing or passing ceremony is required to stay connected to Grandfather.

62. Without the healing and passing ceremonies I feel lost and without my spiritual being.

63. Until recently Healing and Passing Ceremonies have been denied due to Covid, burn-ban or lack of staff.

64. Concerning the Independent Native American callout: (1) One member has never been in the Red Wolf or Gray Wolf callout; (2) I came from the Red Wolf callout; (3) Two members were a part of the Red Wolf and Gray Wolf callout; and (4) There are a total of seven members.

65. The Native American callouts use a fire once per week and use what the facility calls dangerous tools once per week or more for the practice of their religion.

66. The Native American groups have offered to return to the method whereby they pay for the meals required by the religion and have been denied.

67. The Native American groups have not been allowed to purchase the equipment necessary for the safe preparation of traditional meals. For example, a pot for the fire, camp grill for the fire, etc.

68. The Native American groups have members that were trained in the SPTP Vocational Training Program for Foodservice. They were qualified and trained

in the safe preparation, handling and cooking of food and did so as a part of their job. I was one of those.

69. The Native American groups have individuals that were trained in Foodservice in the Department of Corrections and worked as a cook therein.

70. I have not been required to eat my meal in my room for more than a year, except for when I was on seclusion called quarantine by the facility.

71. There is no mask mandate in place at this time in the facility, nor any social distancing requirements.

72. The facility requires we eat our meals in the day hall and sit up to four persons per 36" square table.

73. Sweat ceremony takes no less than six hours to properly complete. This is done in the following stages: (1) Fire building and heating of rocks takes 1.5 to 1.75 hours; (2) There are four rounds; (3) Round 1 takes 30 minutes; (4) Heat the rocks for round two takes 1.0 to 1.5 hours; (5) Round 2 takes thirty minutes; (6) Heat the rocks for round 3 takes 1.0 to 1.5 hours; (7) Round 3 takes thirty minutes; (8) Heat the rocks for round 4 takes 1.0 to 1.5 hours; (9) Round 4 takes thirty minutes; and (10) Clean up and close out takes 1.0 to 1.5 hours.

74. The Independent Native American callout has not been assigned a separate area in which for them to practice their religion.

75. LSH/SPTP preferentially subsidizes the cost to purchase specific meals at a higher rate for the Jewish religion. This includes those that ask for a kosher diet and are not practicing a religion.

76. LSH/SPTP preferentially subsidizes the cost for Ramadan meals and Lamb at the close of Ramadan for those of the Muslim faith.

77. Currently the meals delivered to the unit for daily consumption are not prepackaged, they were served from a bulk container off a buffet like line and delivered in rubber trays.

78. The food currently delivered to the unit is a danger to the health and safety of Mr. Mallard in that it is never at a safe temperature per the food code.

79. The food currently delivered to the unit is nutritionally defunct in that it is overcooked to where no nutrients are left or it is undercooked to the point it cannot be consumed.

**80.** Formal and informal complaints are made to the facility daily concerning the danger the food delivered presents. These go unanswered and no changes are made. In fact one answer given was by the head of the food service department that stated in order to be nutritional the vegetables had to be well overcooked.

b. **Defendants' Factual Contentions.**

**1.** Laura Howard is the Secretary of KDADS. She joined the agency in January 14, 2019.

**2.** Defendant Rop has been the administrative program director for the Sexual Predator Treatment Program (SPTP) at Larned State Hospital (LSH) since July 25, 2022.

**3.** On September 19, 2008, the State petitioned for Plaintiff's civil confinement under K.S.A. 59-29a01 *et seq.*, the Kansas Sexually Violent Predator Act ("KSVPA"). Plaintiff met the legal criteria beyond a reasonable doubt for commitment and treatment as a sexually violent predator. Accordingly, the Secretary of the Department of Social and Rehabilitation Services placed Plaintiff in the Sexual Predator Treatment Program ("SPTP") at Larned State Hospital ("LSH") in Pawnee County, Kansas, in October, 2009. *See Mallard v. Bruffett*, 394 P.3d 156 (table opinion), 2017 WL 2021164 (Kan. Ct. App. May 12, 2017). Plaintiff remains committed pursuant to the KSVPA, as amended, and in SPTP in the custody of the Secretary.

**4.** KDADS has supervisory authority over LSH, a psychiatric facility. One of the programs located on the LSH campus is SPTP. SPTP provides treatment for convicted sex offenders who have completed their prison sentences but have been determined by the Courts to be violent sexual offenders in need of involuntary inpatient treatment.

**5.** SPTP has been given two primary missions. First, SPTP provides for the public safety to prevent further victimization of others by sexual offenders assigned to the program. This requires adequate security and the ability to establish a safe environment for staff and residents within the boundaries of the parts of the LSH campus dedicated to SPTP. The second mission of SPTP is to provide treatment to those residents willing to engage in the work of personal change. The ultimate aim of this treatment is to reduce the individual's risk for re-offense to a level, which would allow the return of the individual to society as a contributing, productive citizen.

**6.** The inpatient SPTP housing is in the Dillon Building, Isaac Ray Building, and Jung Building. At all relevant times, Mallard has been a resident in the inpatient housing in Dillon at LSH. Dillon is a secure facility in the sense that it is much like a jail or prison. Entry to and exit from the buildings are by security-monitored, locked entrances. Its grounds are surrounded by fencing and wire.

    The fencing is separated from surrounding structures and woodlands to prevent unobserved access.

7. Areas in and around Dillon have been dedicated for residents to engage in the religious exercise of their choice.  For adherents to faiths that conduct ceremonies and services outdoors, a fenced and secure area is provided at the Northwest corner of Dillon's grounds.  The area has been parceled to provide separate plots for worship/ceremonies by adherents of the faith systems of Native Americans identified as Gray Wolf, Red Wolf and Independent.  Then there are also separate plots within the area for adherents to other faith systems.

8. On or about March 12, 2020, LSH activated an "Pandemic Preparedness Plan" to address how to best avoid and manage COVID-19 transmission and infection at LSH.  The plan has been updated and modified overtime.  Among many other items, the plan lists and listed restrictions on group activities of LSH visitors, staff, patients and SVP residents.  The restrictions were and are religion neutral, both as to religion generally and as to any particular religion.  The scope of the restrictions has varied depending upon active COVID-19 cases in Pawnee County and surrounding counties, active COVID-19 cases in LSH staff or patient/resident.  LSH has moved in and out of different phases.  However, resident have always been permitted to conduct individual religious services regardless of the phase.

9. Overtime COVID-19 restrictions were loosened or retightened to respond to infection levels at LSH or within Pawnee County.

10. In designing the scope and application of restrictions and measures because of COVID-19, LSH/SPTP had to account for the fact that (1) patients and residents, along with LSH staff, are necessarily confined to relatively small areas within LSH's buildings and (2) many of LSH's patients and most of the SPTP residents have a higher risk of serious complications and even death from COVID-19 infection than general populations because of their preexisting health conditions and age.

11. Religious adherents and, in particular Native American religion adherents, were in no way singled out or treated differently in comparison to other religions or other group activities.

12. Defendant Howard has not participated in decisions on COVID-19 restrictions at LSH.

13. Native American religious groups are currently permitted to smudge daily, to conduct pipe and drum ceremonies weekly, and to conduct healing and passing ceremonies.

14. Due to a lack of moisture or fire hazard conditions, from time to time, the Board of County Commissioners of Pawnee County imposed a burn ban for the county, which placed restrictions on outdoor burning.  LSH previously

interpreted the burn bans to prohibit outdoor non-liquid smudging and smoking. But outdoor non-liquid smudging and pipe ceremonies have been permitted even during a burn ban since September 11, 2022, so long as there is a bucket of sand and water at each smudge location and the area's garden hose is hooked-up and attended by a staff member.

15. In March of 2020, two sweat lodges had been erected in the area described in ¶ vii, *supra*, which were dedicated for the separate use by adherents of the faith systems of Native Americans identified as Grey Wolf and Red Wolf. There has never been a sweat lodge for the Independents, which is a small group of residents that split off from the Grey Wolf group.

16. Sometime in 2020, the sweat lodges at Dillon deteriorated from exposure to the elements to so they had to be removed. In 2023, the willow materials necessary for any reconstruction was not available for harvest until late spring.

17. Sweat lodge ceremonies are either currently permitted or soon will be permitted once sweat lodges have been constructed.

18. SPTP has not denied a Native American spiritual leader from coming in to conduct worship services.

19. Residents currently eat their meals in their rooms. Residents' meals are prepared at the LSH kitchen and served in pre-packaged portions. Before LSH's COVID-19 protocol was in place, residents housed at Dillon generally ate their meals in its cafeteria under staff supervision. However, meals have not been served to residents at the cafeteria since March of 2020 because the cafeteria room is not large enough to accommodate social distancing mandated under even the least restrictive phase of the Pandemic Preparedness Plan and the required masking is not possible while eating.

20. Additionally, since March 2020, residents have not been allowed to have outdoor group meals/feasts. Generally, the group meals are not permitted because the operative phase of the LSH's COVID protocol prohibits group gatherings or, under the applicable phase requirement, the available space outdoors for the meal was not sufficient to accommodate the required social distancing and masking.

21. LSH medical professional staff have concluded that meals or feasts that are served "family-style," instead of by separately packaged portions, cannot be allowed because of the unacceptable risk, in the jail/prison like setting, of the transmission of diseases and infections. Furthermore, LSH and residents are not equipped to properly prepare some of the traditional foods (deer, elk, buffalo, pemmican and perhaps even fry bread, in the "traditional" manner), so that the food is safe for consumption. There are also unacceptable security and safety problems from allowing residents to prepare the meals (*e.g.*, access to fire and potentially dangerous tools). Finally, LSH/SPTP does not have the

11

food budget to pay the additional cost for traditional meals, and cannot preferentially subsidize the exercise of religion by paying more for Native American religious meals/feasts than it already pays for residents' usual daily meals. Thus, LSH/SPTP currently anticipates that religious meals and feasts may be observed in the future when COVID-19 protocols permit. But LSH/SPTP is considering and likely to adopt a policy that the meals must be in separately packaged portions, properly prepared, and the additional cost of the meals/feasts must be borne by resident(s) or outside donor(s), with SPTP's contribution limited to what it does not pay to offer some usual daily meals on the day of the religious meal/feast.

22. Nevertheless, there has not been a time where SVP residents could not eat religious meals in their room, by themselves, so long as the resident timely requested the special food, paid any expense beyond the normal cost of the meal that LSH would otherwise provide, and the food preparation met basic hygienic and health requirements.

23. Scheduling issues, staffing issues, and the priority to provide treatment to residents limit the amount of time that can be spent on religious activities.

## 4. LEGAL CLAIMS AND DEFENSES.

### a. Plaintiff's Claims.

Plaintiff asserts that he is entitled to recover upon the following theories:

    i. Count I: United States Constitution First Amendment Religious Practice

    ii. Count II: United States Constitution First Amendment Religious Discrimination

    iii. Count III: United States Constitution Eighth Amendment

    iv. Count IV: United States Constitution Fourteenth Amendment

    v. Count V: 42 U.S.C. § 2000bb *et seq.* Religious Freedom Restoration Act

    vi. Count VI: 42 U.S.C. § 2000cc *et seq.* Religious Exercise In Land Use And By Institutionalized Persons

    vii. Count VII: K.S.A. § 60-5301 *et seq.* Kansas Preservation of Religious Freedom Act

### b. Defendants' Defenses.

Defendant asserts the following defenses:

    i. Eleventh Amendment immunity

      ii.      Lack of standing

      iii.     Mootness

      iv.     RFRA has been held unconstitutional as applied to the states

      v.      RLUIPA does not support individual capacity claims

      vi.     Failure to exhaust administrative remedies with regard to the KPRFA

      vii.    Qualified immunity

      viii.   Failure to state a claim

      ix.     Lack of personal participation

      x.      Lack of a factual basis for some claims and requested remedies

      xi.     No substantial burden to religious exercise

      xii.    Any substantial burden on sincerely held religious beliefs is justified by compelling government interests

      xiii.   No discriminatory purpose

      xiv.   No conscious or intentional interference with free exercise of religion

      xv.    Any substantial burden on sincerely held religious beliefs is reasonably related to legitimate government interests, and is not an exaggerated response to such objectives

      xvi.   The Court should decline to exercise supplemental jurisdiction over the state law claim

**5.**    **DAMAGES AND NON-MONETARY RELIEF REQUESTED.**

Plaintiff requests declaratory and injunctive relief as set forth below. No monetary damages or fees requested.

1) I request that this Court declare that denial of a Sweat Lodge ceremony violates my rights to practice my religion in accords with the dictates of the United States Constitution and all laws, Federal and State, of this country.

2) I request that this Court declare that denial of a Healing and Passing Ceremonies ceremony violates my rights to practice my religion in accords with the dictates of the United States Constitution and all laws, Federal and State, of this country.

3) I request that this Court declare that denial of a Feast violates my rights to practice my religion in accords with the dictates of the United States Constitution and all laws, Federal and State, of this country.

4) I request that this Court declare that denial of a daily Smudging ceremony violates my rights to practice my religion in accords with the dictates of the United States Constitution and all laws, Federal and State, of this country.

5) I request that this Court declare that denial of a Pipe and Drum Ceremony, once per week, violates my rights to practice my religion in accords with the dictates of the United States Constitution and all laws, Federal and State, of this country.

6) I request that this Court declare that denial of a Pow-Wow ceremony violates my rights to practice my religion in accords with the dictates of the United States Constitution and all laws, Federal and State, of this country.

7) I request that this Court declare that denial of access to or allowance for a spiritual guide to come in the facility to assist me in my practice violates my rights to practice my religion in accords with the dictates of the United States Constitution and all laws, Federal and State, of this country.

8) I request that this Court declare that denial of a proper area for the Native American religion violates my rights to practice my religion in accords with the dictates of the United States Constitution and all laws, Federal and State, of this country.

9) Declare that religious discrimination has occurred to the Native American religion that is not held applicable to the Muslim, Jewish, Catholic, or Christian faith, violating my rights to practice my religion in accords with the dictates of the United States Constitution and all laws, Federal and State, of this country.

10) Declare that Laura Howard, Secretary of KDADS, has a responsibility to ensure that my right to practice my religion not be violated.

11) Declare that Laura Howard has done nothing to prevent the abuse of my ability to practice my religion.

12) Declare that as the top administrator, Gabriel Rop, has a responsibility to ensure that my right to practice my religion not be violated.

13) Declare that as the top administrator, Gabriel Rop, has done nothing to prevent the abuse of my ability to practice my religion.

14) To restore the proper practice of my sincerely held religious beliefs order that the Defendants provide the following, and enjoin them, from ever denying these items:

   a. On Monday thru Sunday there should be smudging allowed twice a day, morning and evening without fail.

   b. Feasts should be allowed no less than eight times per year. That include:

      i. During the winter solstice, summer solstice, fall equinox, spring equinox, Pow-Wow, tribe get togethers and other necessary holidays.
      ii. The meals should be prepared by a practicing Native American in a traditional Native American manner as my ancestors did over an open flame.
      iii. The meal should include traditional Native American foods such as Buffalo, corn pemmican, fry bread. This is not an all-inclusive list.

   c. Once per week the sweat lodge ceremony shall be permitted to be held. Including in this shall be:

      i. A shovel and rake shall be provided without fail.
      ii. Firewood and rocks shall be provided.
      iii. Thirty-five to forty pieces of willow ten to fifteen feet long shall be provided every year for building the sweat lodge.
      iv. A fire source shall be allowed to heat the rocks without fail.
      v. A source of water shall be allowed without fail. This shall include an outdoor camp style shower.
      vi. A small earthen mound as a scared alter shall be allowed to be built outside the sweat lodge in accords with Native American tradition.
      vii. The Sweat Lodge ceremony shall be no less than five hours in length, from the time the fire has been started.
      viii. The Sweat Lodge ceremony shall not be limited to only those of Indian ancestry. It shall be allowed for all who are practicing the Native American way and have professed a desire, willingness, and following of the Native American religion as a sincerely held belief.
      ix. Participants in the Sweat Lodge ceremony shall be allowed to wear only a pair of shorts on the religious grounds while participating in the Sweat.
      x. Sweat Lodge ceremony shall be at a scheduled time that does not prevent one from participating or at a time that is likely to be cancelled, shortened, or ended early.

      xi. If an emergency count is necessary during the Sweat Lodge ceremony, the following shall be followed: a. Supervising staff will inform the participants respectfully and without entering a sacred area to include:
   1. The area between the fire and the lodge; {2) walking behind or on the sides of the lodge; and {3) a blessed area.
   2. If a round has been started the participants shall be allowed to finish the round before being required to exit for a physical count.
   3. Participants will be counted in the religious area and not be required to return to their living unit or room.

d. Once per week the Pipe and Drum ceremony shall be permitted to be held. This shall include:

   i. The ability to use the sacred pipe without fail.
   ii. The ability to have tobacco, without fail.
   iii. The ability to use a lighter without fail.
   iv. The facility shall provide outdoor space without fail.
   v. To have a traditional Native American drum for the ceremony without fail.
   vi. To use the traditional Native American drum for the ceremony without fail.
   vii. The ceremony shall be no less than two hours.
   viii. All tribe members be allowed to attend without fail.
   ix. The pipe should be stored with other sacred objects such as but not limited to: ribbons, bones, sage, tobacco, sweet grass, Kinnikinnick and corn.
   x. The pipe should never be handled by anyone that is not a Native American.

e. A spiritual guide or Native American elder shall be allowed to participate or assist me, by coming to the facility, for the following:

   i. Once per week if requested.
   ii. Pow-Wow
   iii. Feasts
   iv. Pipe and drum ceremony
   v. Smudging
   vi. Sweat lodge ceremony
   vii. Healing ceremony
   viii. Passing ceremony

f. A spiritual guide or Native American elder shall be allowed to bring with them sacred items such as:

16

      i. Medicine bundle, sage, sweet grass, cedar, small drum, rattle, or other items that they deem necessary for the Native American religion, which should never be handled by anyone who is not Native American.
     ii. They should not be strip searched but can go thru the metal detector.
    iii. They should be allowed to come in with traditional Native American garb, such as clothing and Native American headdress.
    iv. A spiritual guide should be allowed to come in for sweat lodge ceremonies, feasts, healing or passing ceremonies.

g. Pow-Wow (Multi-Tribal Spiritual Gathering) should be an annual event without fail under the following:

      i. All practicing Native Americans should be allowed to attend without fail.
     ii. Outside visitors should be allowed to attend such as Spiritual guides and family members who are on the approved visitor list.
    iii. Traditional Native American food such as but limited to corn pemmican, buffalo meat and fry bread shall be provided by the State or be allowed to be brought in by the visitors.
    iv. The Spiritual Guides shall be allowed to bring in sage, sweet grass, cedar, small drum, or other items that they deem necessary for the Native American religion.
     v. They should be allowed to come in with traditional Native American garb, such as clothing and Native American headdress.

h. Healing and or passing ceremonies, should be conducted in a timely manner, with healing ceremonies being done as soon as an illness or hospitalization is learned of, and passing ceremonies being done within twenty four hours of the passing without fail. This shall include:

      i. The Sacred Pipe, tobacco, sage, sweet grass, cedar smudge bowl and feather fan shall be allowed without fail.
     ii. Time permitting Spiritual guides, shall be allowed to come in for the healing or passing ceremony.
    iii. Spiritual guides shall be allowed to bring in a medicine bundle, sage, sweet grass, cedar, small drum or any other Native American items that they deem necessary for the Native American religion.
    iv. If chosen to do so the mourner shall be permitted to cut their hair with the individual being allowed to hold the hair until the next pipe and drum ceremony where it shall be burned.

i. The facility will provide an area for the Native American Religion so that I may practice my beliefs. This will include:

      i. Enough space to have a sweat lodge, small herb garden 3'X3', an area for a fire pit, an area for preparation of the feasts, and an area big enough to hold the Pow-Wow of other gathering of the tribes.
     ii. The area will be blessed and made sacred through tradition Native American Practices and when done:
  1. The facility will ensure that no person through than a practicing Native American enters the area.
  2. All lawn care (mowing, ect.} will be done by a practicing Native American; and
  3. The Boundaries will be clearly marked with permanent signs posted to ensure no accidental or mistaken violation occurs.
  4. Four (4) small painted stones, colored yellow, black, red and white shall be placed to mark the four directions, East, South, West and North.

   iii. The area shall be large enough to have a storage area for items that I may not retain in my room. For example, rocks for the sweat lodge, firewood for the fire pit and other necessary items. The storage area will include a weather proofed small shed for the items to be stored that cannot be exposed to the elements.

   iv. The area will have a source of water and for sanitary purposes a camp sink for feasts. There should be a bathroom within easy distance for toiletry purposes.

    v. The area should be screened to provide privacy during Sweat Lodge ceremonies.

   vi. The area will be designated and used only by practicing Native Americans and not any other group or religion.

**6.  AMENDMENTS TO PLEADINGS.**

None.

**7.  DISCOVERY.**

Under the scheduling order and any amendments, all discovery was to have been completed by May 31, 2023. Plaintiff moved to reopen discovery and the request was denied. Discovery is complete.

Unopposed discovery may continue after the deadline to complete discovery so long as it does not delay briefing or ruling on dispositive motions or other pretrial preparations. Although discovery may be conducted beyond the deadline to complete discovery if all parties agree to do so, under these circumstances the Court will not be available to resolve any disputes that arise during the course of such extended discovery.

**8.      MOTIONS.**

   **a.      Pending Motions.**

   None.

   **b.      Additional Pretrial Motions.**

After the pretrial conference, the parties intend to file the following motions:

   Defendants intend to file a Motion for Summary Judgment.

   Plaintiff intends to file a Motion for Summary Judgment.

The dispositive-motion deadline, as established in the scheduling order and any amendments, is **September 1, 2023**. The parties should follow the summary-judgment guidelines on the Court's website:

   *http://ksd.uscourts.gov/wp-content/uploads/2015/10/Summary-Judgment-Guidelines.pdf*

Principal briefs in support of, or in response to, summary judgment motions must not exceed 40 pages and replies must not exceed 15 pages. *See* D. KAN. RULE 7.1(d)(2). Any motion to exceed these page limits or for an extension of briefing deadlines must be filed at least three days before the brief's filing deadline. *See* D. KAN. RULE 6.1(a), 7.1(d)(4).

   **c.      Motions Regarding Expert Testimony.** All motions to exclude the testimony of expert witnesses pursuant to Fed. R. Evid. 702-705, *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993), *Kumho Tire Co. v. Carmichael*, 526 U.S. 137 (1999), or similar case law, must be filed at least **60 days before trial.**

9. **TRIAL.**

The trial docket setting, as established in the scheduling order and any amendments, is **March 4, 2024, at 9:00 a.m., in Topeka, Kansas**.  This case will be tried by the Court sitting without a jury.  Trial is expected to take approximately 2-3 days.  The Court will attempt to decide any timely filed dispositive motions approximately 60 days before trial.  If no dispositive motions are timely filed, or if the case remains at issue after timely dispositive motions have been decided, then the trial judge may enter an order or convene another pretrial conference to set deadlines for filing final witness and exhibit disclosures, exchanging and marking trial exhibits, designating deposition testimony for presentation at trial, motions in limine, proposed instructions in jury trials, and proposed findings of fact and conclusions of law in bench trials.

10. **ALTERNATIVE DISPUTE RESOLUTION (ADR).**

The status of settlement negotiations is as follows: The parties currently believe the prospects for settlement of this case are poor and they do not believe that further court-ordered ADR would be helpful.

The parties are reminded that, under D. Kan. Rule 40.3, they must immediately notify the Court if they reach an agreement that resolves the litigation as to any or all parties.  Jury costs may be assessed under this rule if the parties do not provide notice of settlement to the Court's jury coordinator at least one full business day before the scheduled trial date.

IT IS SO ORDERED.

Dated July 27th, 2023, at Wichita, Kansas.

/s KENNETH G. GALE
Kenneth G. Gale
U. S. Magistrate Judge