IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| EUGENE K. MALLARD, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case. No. 22-4053-EFM |
| | ) |
| LAURA HOWARD, *et al.*, | ) |
| | ) |
| Defendants. | ) |
| | ) |

**DEFENDANTS' REPLY IN SUPPORT OF DEFENDANTS' MOTION
FOR SUMMARY JUDGMENT**

Defendants Laura Howard and Gabriel Rop ("Defendants") submit this Reply in further support of their Motion for Summary Judgment (Doc. 27). Defendants assert that Plaintiff Nicholas Cox fails to controvert the material facts set forth in Defendants' motion as required by D. Kan. Rule 56.1 and does not overcome their legal arguments. Accordingly, Defendants' motion should be granted in its entirety. Defendants incorporate herein, as if set forth in full, the arguments and authorities in their Memorandum in Support. (Doc. 28.) Defendants' motion should be granted for the reasons previously stated.

**STATEMENT OF FACTS**

As required by D. Kan. Rule 56.1(d), Defendants served upon Mallard the Notice to Pro Se Litigant Who Opposes a Summary Judgment Motion, along with the required texts of D. Kan. Rule 56.1 and Fed. R. Civ. P. 56. (Doc. 29). Yet Mallard effectively admits *all* of Defendants' Statement of Facts (hereinafter "DSOF"). First, he *expressly* admits the vast majority of it. Specifically, Mallard has expressly admitted the following DSOF paragraphs: ¶¶ 1-2, 4-6, 8-13, 16, 18, 20, 22-49, 51-55, 58-69, 71-78, 80-85, 87-88, 90, 92-94, 96-97, 99-134.

While Mallard purports to contest the remaining paragraphs, Mallard has not submitted

admissible evidence to controvert them. For paragraph 3, Mallard refers to his argument section (*see* Doc. 35 at 11-12), which Defendants address in their argument section (in section IV below).

For paragraphs 7, 14-15, 17, 19, 21, 50, 57, 70, 89/91, 95, and 98, Mallard cites exhibits that purport to be declarations or affidavits. But to be affidavits, they must be notarized under oath. Affidavit, Black's Law Dictionary (11th ed. 2019) ("A voluntary declaration of facts written down and sworn to by a declarant, usu. before an officer authorized to administer oaths."). Mallard's exhibits are not. And to be proper unsworn declarations under 28 U.S.C. § 1746 (which Mallard cites in each exhibit), they must actually follow 28 U.S.C. § 1746, which states in relevant part:

> Wherever, under any law of the United States or under any rule, regulation, order, or requirement made pursuant to law, any matter is required or permitted to be supported, evidenced, established, or proved by the sworn declaration, verification, certificate, statement, oath, or affidavit, in writing of the person making the same (other than a deposition, or an oath of office, or an oath required to be taken before a specified official other than a notary public), such matter may, with like force and effect, be supported, evidenced, established, or proved by the unsworn declaration, certificate, verification, or statement, in writing of such person which is subscribed by him, **as true under penalty of perjury,** and dated, **in substantially the following form:**
>
> . . .
>
> **(2) If executed within the United States, its territories, possessions, or commonwealths: "I declare (or certify, verify, or state) under penalty of perjury that the foregoing is true and correct. Executed on (date). (Signature)".**

28 U.S.C. § 1746 (emphasis added). Mallard's exhibits are not signed under penalty of perjury and do not contain any language remotely resembling the required statutory form. Mallard is clearly aware of what it looks like for declarations to be declared under penalty of perjury because he specifically notes that "[t]he Defendant(s) swore out declarations under penalty of

2

perjury" in order to assert those declarants committed perjury. (Doc. 35 at 19.) The language Mallard uses in his exhibits appears to closely match the language Defendants' used in their declarations. *Compare* Doc. 35-1 to 35-5 *with* Doc. 28-1 to 28-6. But Mallard left out <u>the most essential part</u> where he is supposed to acknowledge that the penalty of perjury attaches to his words. Therefore, the submitted exhibits are inadmissible, and Mallard fails to controvert these paragraphs. *See Belancio v. Kan. Dep't of Health & Env.*, No. 17-1180-EFM, 2018 WL 4538451, at *1 to *2 (D. Kan. Sept. 21, 2018).[1]

For paragraphs 56, 86, 91, and 135-37, Mallard cites no evidence in the record at all and makes only conclusory allegations. This is insufficient to controvert Defendants' facts.

For paragraph 79, Mallard cites that he needs more information to "determine the truthfulness of this." But Mallard had an adequate opportunity for over five months to conduct discovery. (*See* Doc. 14 at 2.) Discovery has now ended as confirmed by the pretrial order. (Doc. 24 at 18.) So Mallard's lack of supporting evidence means only that he has failed to controvert paragraph 79. Mallard has no excuse for this, as he was served with the required "Notice to Pro Se Litigant" for summary judgment motions (Doc. 29) and pro se litigants are expected to follow the same rules of procedure as other litigants in this circuit. *Garrett v. Selby Connor Maddux & Janer*, 425 F.3d 836, 840 (10th Cir. 2005); *see also Brigance v. Vail Summit Resorts, Inc.*, No. 15-cv-1394, 2017 WL 131797, at *3 n.1 (D. Colo. Jan. 13, 2017) ("a mere lack of personal knowledge is insufficient to demonstrate a genuine dispute at the summary judgment phase where Plaintiff has identified no contradictory evidence or factual inference"); Fed. R. Civ. P.

---

[1] Additionally, Mallard's responses to paragraphs 7 and 89/91 only attempt to add additional facts and do not contradict Defendants' paragraphs.

56; D. Kan. Rule 56.1.

So Mallard fails to establish any genuine disputes of material fact and Defendants' Statement of Facts should be treated as true for purposes of the summary judgment motion. D. Kan. Rule 56.1(a); *see Reed v. Bennett*, 312 F.3d 1190, 1194-95 (10th Cir. 2002). But Defendants will stipulate, with regard to Mallard's response to paragraph 14, that Mallard is now a member of the Red Wolf callout.

## ARGUMENTS AND AUTHORITIES

**I.  The evidentiary record only supports food preparation issues when residents cook their own food.**

Mallard makes a conclusory allegation that the food provided to him by LSH is not served at temperature. (Doc. 35 at 5-6.) Although Mallard says "the evidence brought forth" shows this, the exhibits Mallard cites are not admissible evidence, which Defendants pointed out in the "Statement of Facts" section above. Mallard claims that the evidence cited by Defendants (in DSOF ¶ 98 (citing Doc. 28-4 at ¶ 47)) is hearsay because Defendant Bennett was allegedly not at a particular callout meeting. But Bennett has been involved in setting and implementing policies and therefore has personal knowledge of the reasons policies were implemented. (Doc. 28-4 at ¶¶ 13, 29-30, 32.) Based on this personal knowledge, she relates in her declaration the reasons the policy against residents preparing their own food was implemented.

**II.  LSH has legal authority to supervise and facilitate the SPTP program.**

Mallard oddly claims that LSH has no legal authority over SPTP. First, the Kansas courts have stated otherwise. *See, e.g., In re Straith*, 364 P.3d 970 (table opinion), 2016 WL 299099, at *1 (Kan. Ct. App. Jan. 22, 2016) (saying "the staff at LSH . . . had lawful custody of Strait as a committed sexual predator"). Second, Mallard's reasoning does not support his conclusion. The Kansas Attorney General opinion Mallard cites concerning policies from the Kansas Department

4

of Corrections (KDOC) is irrelevant because the policies involved in this lawsuit are not policies from KDOC. The *Merryfield v. Larned State Hospital* case only states that *mandamus* actions based on the SVP Act, if they could be brought at all, would have to be brought against the KDADS Secretary rather than against the LSH Superintendent.[2] But here, this case is not a mandamus action.

To try to get around *respondeat superior*, Mallard cites *Brull v. Jordan*, an unpublished state court case, which is not binding on this court regarding matters of federal law. What type of personal participation is necessary to support a § 1983 claim is a matter of federal law.[3] The *Brull* case incorrectly held that the Secretary could be held liable for the actions of subordinates because a state statute directly named the Secretary. But when a statute gives an officer a responsibility, that does not prevent the officer from delegating those duties. *See Kobach v. U.S. Election Assistance Comm'n*, 772 F.3d 1183, 1190 (10th Cir. 2014) (citing *Fleming v. Mohawk Wrecking & Lumber Co.*, 331 U.S. 111, 121 (1947)). Essentially, the *Brull* case held that the Secretary could be held liable under § 1983 for violating an interpretation of *state* law. But under binding precedent on this Court, only rights established by *federal* law, not state law, can support an action under § 1983. *Jones v. City and Cnty. of Denver*, 854 F.2d 1206, 1209 (10th Cir. 1988) ("Section 1983 does not, however, provide a basis for redressing violations of state law, but only for those violations of federal law done under color of state law."). And federal cases in this circuit do not support this direct-statutory-custody theory, either. *See Barber v. Whetsel*, No. Civ-14-454-C, 2014 WL 3853644, at *2 to *3 & n.2 (W.D. Okla. Aug. 5, 2014) (prisoner being in

---

[2] The case also held that the SVP Act provided an exclusive remedy such that mandamus could not be used.

[3] *See Schneider v. City of Grand Junction Police Dep't*, 717 F.3d 760, 767 (10th Cir. 2013).

custody of county sheriff not sufficient to show personal participation of county sheriff); *Hickenbottom v. Niles*, No. Civ-14-645-C, 2015 WL 2089760, at *6 to *7 & n.4 (W.D. Okla. May 4, 2015) (same); *Pierce v. Amaranto*, 276 F. App'x 788, 789, 791 (10th Cir. 2008) (prisoner being in custody of county jail ran by the county sheriff not sufficient to show personal participation of county sheriff). What is more, Mallard has not adequately alleged or established a failure to supervise either.

Mallard states that in Kansas statutes the general civil commitment scheme is separate from the civil commitment scheme, and the civil commitment scheme cannot be used to commit someone under the SVP Act.[4] The Defendants have not claimed otherwise.

Mallard says that the SVP Act is like a Native American tribe, supposedly outside the state's control because of, confusingly enough, controlling state legislation. (Doc. 35 at 10.) Mallard cites no authority to support this paradoxical claim.

Mallard says that HIPAA applies differently to SVP residents than to other residents or patients at LSH. (Doc. 35 at 10.) Regardless of whether this is true, it is irrelevant to the case, as this case does not involve HIPAA.

Mallard states that the *Rooker-Feldman* doctrine means that this Court has to follow state court holdings. (Doc. 35 at 10.) But the *Rooker-Feldman* doctrine applies to *appeals* from state court decisions. *See Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 291 (2005). It does not turn the Supremacy Clause[5] on its head and make unrelated *state* court decisions regarding *federal* matters somehow binding on *federal* courts.

---

[4] The Care and Treatment Act for Mentally Ill Persons can be found at K.S.A. 59-2945 *et seq.*, and the SVP Act can be found at K.S.A. 59-29a01 *et seq.*
[5] U.S. Const. art. VI, cl. 2.

**III.    Administrative remedies must be exhausted for state law claims.**

Mallard cites *Burch v. Keck* for the proposition that the state law requirement to exhaust administrative remedies does not apply to § 1983 actions. (Doc. 35 at 10.) Defendants never claimed otherwise. Defendants stated that Mallard failed to exhaust administrative remedies for his *state law claims*. (Doc. 28 at 40.)

**IV.    Mallard's novel time-balancing method is not required by federal law.**

Mallard claims that the amount of time allowed for each religious callout should be based on a percentage of the time that a "normal" adherent to that religion would spend on religious activities outside of SPTP. (Doc. 35 at 11-12.) Mallard cites no law whatsoever in this section, so he definitely does not demonstrate clearly established law. And, to the contrary, federal case law actually states that the government has a legitimate interest in allowing "*equal* time to the various religious groups." *Brower v. Works*, 41 F. App'x 802, 803 (6th Cir. 2002) (emphasis added). Further, Mallard cites no admissible evidence to support his factual claims regarding how much time a "normal Christian" or a Native American spend on religious activities outside of SPTP.

**V.    Mallard cannot add new claims in his response.**

Mallard newly asserts that the Defendants violated his Fourth Amendment rights (Doc. 35 at 12-13), that they violated his due process rights (Doc. 35 at 14), and that they committed perjury (Doc. 35 at 19). But, as an initial matter, Mallard cannot bring new claims in his response. *See Starnes v. Gillespie*, No. 01-3430-CM, 2004 WL 1003358, at *3 n.2 (D. Kan. Mar. 29, 2004) ("The court will not consider claims which plaintiff did not include in his complaint and presents for the first time in a response brief."); *Waskul v. Washtenaw Cnty. Cmty. Mental Health*, 979 F.3d 426, 440 (6th Cir. 2020) (saying plaintiffs "cannot amend their complaint in an opposition brief or ask the court to consider new allegations (or evidence) not contained in the

7

complaint").

Regarding strip searches in the corrections context, the Tenth Circuit has stated:

> With respect to the scope of the search, "[t]here can be no doubt that a strip search is an invasion of personal rights of the first magnitude." *Chapman v. Nichols*, 989 F.2d 393, 395 (10th Cir. 1993). However, "correctional officials must be permitted to devise reasonable search policies to detect and deter the possession of contraband in their facilities," and "[t]he task of determining whether a policy is reasonably related to legitimate security interests is peculiarly within the province and professional expertise of corrections officials." *Florence v. Bd. of Chosen Freeholders of Cty. of Burlington*, 566 U.S. 318, 328, 132 S.Ct. 1510, 182 L.Ed.2d 566 (2012).

*Whitehead v. Marcantel*, 766 F. App'x 691, 700 (10th Cir. 2019). The security concerns that LSH faces are similar to those faced by a prison. (Doc. 28 at 4, ¶ 8.) The uncontroverted evidence in this case shows that LSH staff believes that strip searches are a necessary security precaution for the sweat lodge ceremony. (Doc. 28 at ¶¶ 74, 76, 83.)

And even if Mallard could add this claim through a response, this Court has stated (quoting the Supreme Court): "In addressing this type of constitutional claim courts must defer to the judgment of correctional officials unless the record contains substantial evidence showing their policies are an unnecessary or unjustified response to problems of jail security." *Clay v. Early*, No. 20-3120-SAC, 2020 WL 5408122, at *3 (D. Kan. Sept. 9, 2020) (quoting *Florence v. Board of Chosen Freeholders of Cty. Of Burlington*, 566 U.S. 318, 322–23 (2012)). In this case, the record does not contain substantial evidence showing that the policies are an unnecessary or unjustified response to problems of facility security, so the Court should defer to the judgment of LSH officials regarding the searches. Rather, the evidence shows that the sweat lodge ceremony poses a heightened security risk that has been addressed through various security measures.

**VI.** **Mallard does not salvage his RFRA claims.**

Because Mallard cannot add new claims in his response, when Mallard states that his

RFRA claim is actually a due process claim because of a "liberty interest" supposedly established by the KPRFA (apparently separate from his KPRFA claim), the Defendants need not respond to it. But Mallard also fails to cite any legal authority that has found it clearly established that the KPRFA creates a liberty interest enforceable through the Due Process Clause.

### VII.     Mallard misunderstands the *McRoy* and *Beyers* decisions.

Mallard appears to claim that *McRoy v. Sheahan* was an abrupt, one-page decision merely affirming a dismissal because it was uncontested. (Doc. 35 at 15.) But it was actually a multiple-page decision saying that given the uncontested *facts* the Court analyzed and agreed with the defendants' arguments of *law* supporting summary judgment. *McRoy v. Sheahan*, 205 F. App'x 462, 464 (7th Cir. 2006). Earlier that year, the Seventh Circuit had held that a court could not grant a dispositive motion solely because it was uncontested. *Raymond v. Ameritech Corp.*, 442 F.3d 600, 608 (7th Cir. 2006). The District of Kansas has held the same. CITE HERE. What is more, the factual situation is the same here, regardless, as Mallard has not controverted any of Defendants' facts.

Mallard claims that the *Beyer* decision is irrelevant because it does not involve anyone's right to practice religion. But Defendants cited the *Beyer* decision for the proposition that SPTP has a compelling interest in prioritizing treatment, which Mallard has not contested.

### VIII.    Federal law, not custom or practice, must clearly establish the right claimed to have been violated.

Mallard claims that "the facility should have returned the religious practices back to the same as pre-covid." (Doc. 35 at 15.) But past custom or practice does not a clearly established federal right create. The Tenth Circuit has stated regarding sweat lodge ceremonies:

> Surely the granting of a religious accommodation to some in the past doesn't bind

9

the government to provide that accommodation to all in the future, especially if experience teaches the accommodation brings with it genuine safety problems that can't be addressed at a reasonable price. If the rule were otherwise, it would only invite the unwelcome side effect of discouraging prison officials from granting the accommodation in the first place—a result directly at odds with RLUIPA's stated purpose.

*Yellowbear v. Lampert*, 741 F.3d 48, 58 (10th Cir. 2014).

Mallard also makes conclusory allegations regarding what he thinks really caused an escape from the religious grounds and what he thinks is minimally necessary to prevent residents (which of course includes himself) from escaping. (Doc. 35 at 16.) But the Supreme Court has said that "[t]he task of determining whether a policy is reasonably related to legitimate security interests is peculiarly within the province and professional expertise of corrections officials." *Florence v. Bd. of Chosen Freeholders*, 566 U.S. 318, 328 (2012). In holding this, the Court has acknowledged "the expertise of these officials and that the judiciary is ill equipped to deal with the difficult and delicate problems of prison management." *Thornburgh v. Abbott*, 490 U.S. 401, 407-08 (1989). The Court noted that "prison officials may well conclude that certain proposed interactions, though seemingly innocuous to laymen, have potentially significant implications for the order and security of the prison." *Id.* at 407.

Mallard makes merely conclusory allegations that staff cause contraband problems. (Doc. 35 at 16.) And even if it were true, it would not disprove that the sweat lodge ceremony poses security risks, including risks related to contraband.

## IX. Under binding Supreme Court precedent, RLUIPA does not support monetary damages.

Mallard claims that RLUIPA supports monetary damages. (Doc. 35 at 16-17.) He cites *Shaw v. Davis* in support. But not only is it an unpublished case from outside the Tenth Circuit, it does not mention monetary damages at all. Rather, it only addresses injunctive relief, saying,

10

"The question that remains is what *injunctive relief* is appropriate to remedy Defendants' violation of RLUIPA." *Shaw v. Davis*, No. 18-0551, 2022 WL 3339550, at *5 (D. Nev. Aug. 12, 2022) (emphasis added).

## X. Mallard misunderstands how scheduling of staff works.

Mallard claims that his requested religious activities would not affect treatment in SPTP. (Doc. 35 at 17-18.) But he has admitted otherwise in paragraphs 108-131, especially in paragraphs 121 and 131. He also appears to misunderstand the nature of the restraints on scheduling, seeing it as only an issue of not scheduling events at the same time rather than including the issue of limited manhours to allot for events.

## XI. Disapproval of job performance is not a legal claim.

Mallard states that "perhaps" the Defendants "are less competent than the previous administrators." (Doc. 35 at 18.) But Mallard cites no legal authority for why his disapproval of Defendants' job performance somehow establishes a legal claim. (And as stated above, he cannot amend his complaint in a response.)

Mallard states that inadequate staffing cannot justify any restrictions on residents' constitutional rights. (Doc. 35 at 19.) He cites no legal authority to overcome the authority Defendants have already cited showing that inadequate staffing can indeed justify restrictions on residents' constitutional rights. (*See* Doc. 28 at 37 & n.7.)

## XII. No documents in the record need to be sealed in this case.

Defendants did not submit any medical records. And Mallard supplies no legal authority to show that the names of individuals in SPTP are confidential, especially considering that the commitment proceedings are a matter of public court record. Defendants are unaware of any confidential materials in their filings that may reasonably need to be sealed. But Mallard is free to move this Court to seal documents if he can demonstrate that they should be sealed.

**CONCLUSION**

For the reasons above and in Defendants' Memorandum in Support (Doc. 28), the Defendants respectfully request that the Court grant their Motion for Summary Judgment (Doc. 27) in its entirety.

Respectfully submitted,

OFFICE OF ATTORNEY GENERAL
KRIS W. KOBACH

/s/ Matthew L. Shoger
Matthew L. Shoger, KS No. 28151
Assistant Attorney General
120 SW 10th Avenue, 2nd Floor
Topeka, Kansas 66612-1597
matt.shoger@ag.ks.gov
(785) 296-2215
Fax: (785) 291-3767
*Attorney for Defendants*

**CERTIFICATE OF SERVICE**

       I hereby certify that on this 20th day of October, 2023, the foregoing document was filed with the clerk of the court by using the CM/ECF system, with a copy to be served on October 23rd by means of FedEx overnight shipping, postage prepaid, addressed to:

Eugene K. Mallard
1301 KS Highway 264
Larned, KS 67550-5353
*Plaintiff, pro se*

                                                 */s/ Matthew L. Shoger*
                                                 Matthew L. Shoger
                                                 Assistant Attorney General